**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR 09-75-GF-BMM |
| Plaintiff/Respondent, | |
| vs. | ORDER GRANTING § 2255 MOTION AND SETTING RE-SENTENCING |
| ERROL ARAM MANN, | |
| Defendant/Movant. | |

This matter comes before the Court on Defendant/Movant Mann's motion to vacate, set aside, or correct his sentence under 28 U.S.C. § 2255. Mann seeks relief under *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551 (2015).

## I. Background

A felon found in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), is subject to a maximum sentence of ten years. *See* 18 U.S.C. § 924(a)(2). The Armed Career Criminal Act, 18 U.S.C. § 924(e)(1), mandates a fifteen-year minimum sentence and a maximum sentence of life in prison, however, if the felon has three previous convictions for a serious drug offense or a

violent felony.

The grand jury indicted Mann on July 17, 2009, on one count of being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) (Count 1), and one count of possession of a stolen firearm in violation of 18 U.S.C. § 922(j) (Count 2). As to Count 1, the caption of the indictment cited the Armed Career Criminal Act, and the text of Count 1 recited that Mann previously had been convicted of felonies on three occasions. *See* Indictment (Doc. 1) at 1-2. The court appointed counsel to represent Mann. Order (Doc. 8).

The parties reached a plea agreement. Mann agreed to plead guilty to Count 1, the violation of 18 U.S.C. § 922(g)(1). The United States agreed to dismiss Count 2, to seek a three-level reduction in Mann's offense level for his acceptance of responsibility, and to recommend a sentence at the low end of the applicable advisory guideline range. *See* Plea Agreement (Doc. 24) at 2 ¶ 4, 3 ¶ 5, 11 ¶ 12, 12 ¶ 13. Mann waived "his right to challenge the sentence in a collateral proceeding pursuant to 28 U.S.C. § 2255," except as to "facts not known or reasonably capable of being known at the time of his entry of guilty plea" or allegations of ineffective assistance of counsel. Plea Agreement (Doc. 20) at 10-11 ¶ 11 para. 2. The court accepted Mann's guilty plea to Count I on March 16, 2010. *See* Minutes (Doc. 23).

A presentence report was prepared. Mann's base offense level under

U.S.S.G. § 2K2.1(a)(2) was 24. He received an upward adjustment for possessing a stolen firearm and a four-level increase for possessing firearms in connection with another felony offense. *See* Presentence Report ¶¶ 20, 21. Mann's status as an armed career criminal under 18 U.S.C. § 924(e)(1), triggered a special provision of the guidelines that superseded the guideline calculation under U.S.S.G. § 2K2.1. This designation elevated Mann's adjusted offense level from 30 to 34. *See* U.S.S.G. § 4B1.4(b). Mann also received a three-level reduction for acceptance of responsibility. These adjustments resulted in a total offense level of 31. Presentence Report ¶¶ 25-29. His criminal history category was VI. His advisory guideline range was 188 to 235 months. The court sentenced Mann on July 19, 2010, to serve 235 months in prison, to be followed by a five-year term of supervised release. *See* Minutes (Doc. 42); Judgment (Doc. 42) at 2-3.

Mann appealed the sentence. He challenged the district court's finding that he had participated in a burglary and its related offense-level enhancements under U.S.S.G. §§ 2K2.1(b)(6), and 4B1.4(b)(3)(A), for possessing a firearm in connection with another felony. *See* Appellant Br. at 7-8 ¶¶ 4-5 (9th Cir. filed Nov. 9, 2010); Resp. Br. at 13-14 (9th Cir. filed Dec. 10, 2010). The Ninth Circuit rejected his arguments. *See* Mem. at 3, *United States v. Mann*, No. 10-30229 (9th Cir. June 27, 2011). Mann's conviction became final on September 26, 2011. *See* *Gonzalez v. Thaler*, __ U.S. __, 132 S. Ct. 641, 653-54 (2012).

The United States Supreme Court held a provision of the Armed Career Criminal Act ("ACCA") unconstitutionally vague on June 26, 2015, so that "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Johnson v. United States*, __ U.S. __, 135 S. Ct. 2551, 2557 (2015). *Johnson* addressed only one portion of the ACCA's definition of a violent felony:

> [T]he term "violent felony" means any crime punishable by imprisonment for a term exceeding one year . . . that—
>
> (i)   has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii)  is burglary, arson, or extortion, involves use of explosives, or *otherwise involves conduct that presents a serious potential risk of physical injury to another*[.]

18 U.S.C. § 924(e)(2)(B). *Johnson* deemed unconstitutionally vague only the italicized language, the "residual clause" of subsection (ii). Subsection (i), commonly called the "force clause," and the "enumerated" or "generic" offenses in subsection (ii) remain valid. *See Johnson*, 135 S. Ct. at 2563.

On April 18, 2016, the Supreme Court held that the new rule announced in *Johnson* applied not only to all cases pending in district courts or on direct review when *Johnson* was issued, but also applied to cases coming before courts on collateral review. *See Welch v. United States*, __ U.S. __, 136 S. Ct. 1257, 1265 (2016). Mann timely filed his § 2255 motion on May 12, 2016 *See* 28 U.S.C. § 2255(f)(3). He contends that the *Johnson* decision means he was unconstitutionally

4

sentenced as an armed career criminal and he is entitled to relief under 28 U.S.C. § 2255(a).

## II. Motions to Dismiss

The United States argues that "Mann's claims are essentially *Taylor/Shepard* categorical analysis claims," that is, claims concerning application of the force clause or the enumerated offenses, rather than a claim arising under *Johnson* and the residual clause. *See* Answer (Doc. 65) at 4. As a result, it argues, Mann's motion should be dismissed as untimely and as procedurally defaulted. *See id.* at 4, 5-7.

### A. Threshold Question: What Is Mann's Claim?

The United States's contention that Mann seeks relief under authority other than *Johnson* confuses its procedural defenses. The Court first must assess the exact nature of Mann's claim. Taking Mann's claim at face value, he asserts that he "does not qualify as an armed career criminal . . . [i]n light of the Supreme Court's decision in *Johnson*." Mot. § 2255 (Doc. 58) at 2 ¶ 4.

The party who challenges a duly entered criminal judgment under § 2255 has the burden of proof. *See, e.g.*, *Parke v. Raley*, 506 U.S. 20, 29-30 (1992). To obtain the benefit of *Johnson*, Mann must show that at least one of his prior convictions qualified as a violent felony only under the residual clause. He can

make that showing only by demonstrating that he does *not* qualify as an armed career criminal under any *other* provision of the ACCA. (*See supra* at 4).

      *Johnson* addressed neither the force clause, nor the enumerated offenses provision. *See supra* at 4. The United States asserts that Mann's "claims as argued here could have been raised before," in light of Mann's discussion of non-*Johnson* related provisions of the ACCA. Answer at 4. By before, the United States means either on direct appeal, or possibly in an earlier-filed § 2255 motion. This statement would be true if Mann were required to make a clear record to show the basis on which the court deemed him to be an armed career criminal. He possessed no such burden. A defendant who believes one subsection of a law applies to him is not required to object to all the provisions that he believes do not apply to him. *See, e.g.*, *Mathis v. United States*, __ U.S. __, 136 S. Ct. 2243, 2253-54 (2016); *Descamps v. United States*, __ U.S. __, 133 S. Ct. 2276, 2289 (2013).

      The United States correctly notes that the record of the case fails to show whether the court deemed Mann to be an armed career criminal under the force clause, under one or more of the enumerated offenses, or under the residual clause. *See, e.g.*, Answer at 24 ("All three . . . convictions qualify . . . under the force clause or the enumerated offense clause. Therefore, the residual clause *was* never invoked"). If the sentencing court had determined, for example, that Mann's conviction for attempted aggravated assault constituted a violent felony under the

force clause, *Johnson* might not confer a right to challenge the meaning of that conviction now. The court entered no findings of this specificity at sentencing. The United States sought to have Mann sentenced as an armed career criminal. This desire required the United States to submit to the sentencing court the statutes under which Mann was convicted so that the court could make appropriate findings. *See United States v. Castillo-Marin*, 684 F.3d 914, 919-21 (9th Cir. 2012); *United States v. Pimentel-Flores*, 339 F.3d 959, 967-68 (9th Cir. 2003).

## B. Statute of Limitations

The United States concedes that Mann presents a timely claim if he bases it on *Johnson*. *See* Answer at 4. It appears that Mann grounds his claim in the reasoning of *Johnson*. The motion to dismiss Mann's motion as untimely is denied.

## C. Procedural Default

The United States also asserts that Mann should have challenged his designation as an armed career criminal at sentencing, and on appeal. Mann pursued a direct appeal. He failed to bring a constitutional challenge, or any other challenge, to his armed career criminal designation, either on direct appeal, or at sentencing. This double default normally would bar his current claim. *See United States v. Frady*, 456 U.S. 152, 162, 168 (1982).

A court may not hear the merits of a defaulted claim unless the defendant's

default is excused. Default may be excused if a defendant shows both cause for his default and prejudice resulting from the constitutional violation he asserts, or alternatively, that he is factually innocent. *See, e.g.*, *Massaro v. United States*, 538 U.S. 500, 504 (2003); *Bousley v. United States*, 523 U.S. 614, 622, 624 (1998); *Murray v. Carrier*, 477 U.S. 478, 496-97 (1986); *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977). Mann seeks to show cause and prejudice, rather than factual innocence. He has satisfied the prejudice prong. Mann's minimum sentence exceeded by five years the maximum that otherwise would have applied if he had not been designated as an armed career criminal. The cause element remains the point in question.

Mann seeks to excuse his default due to the novelty of the legal basis of a constitutional challenge to the ACCA. Mann contends that the novelty of this challenge prevented him from having "realistically appealed his conviction." *Reed v. Ross*, 468 U.S. 1, 19 (1984). Novelty to excuse default presents a high bar. The defendant must show that it was reasonable for competent counsel engaged in conscientious research of his client's case to be unaware the law could support the defaulted claim. *See Ross*, 468 U.S. at 14-16. The objective inquiry should not be based on what Mann's counsel personally did, or did not, consider. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 133-34 (1982).

When several circuits repeatedly have rejected a particular claim, but

another circuit has viewed the claim differently, the outlying circuit's decision provides some legal support for an argument that other circuits should change course. A defendant who challenges his conviction in one of the majority circuits probably cannot show that his claim was truly novel. He can show only that the claim was "unacceptable to that particular court at that particular time." *Bousley*, 523 U.S. at 622 (quoting *Engle*, 456 U.S. at 130 n.35). This showing generally fails to excuse a default. Legal developments that occur after the defendant's conviction became final might "have made counsel's task easier." The question remains "whether at the time of the default the claim was 'available' at all." *Smith v. Murray*, 477 U.S. 527, 537 (1986).

A claim unacceptable *to the Supreme Court* at the time of the defendant's default differs from a claim unacceptable in one or more appellate courts. When the Supreme Court rejects a claim, that claim no longer has (if it ever had) a foothold in the law and so is "unavailable." The Supreme Court itself, in *Ross*, observed that when it reverses its own precedent and also gives its new rule retroactive application, "there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a . . . court to adopt the position that [the Supreme] Court has ultimately adopted." *Ross*, 468 U.S. at 17. Further, when the Supreme Court has not addressed an issue, but there is "a longstanding and widespread practice . . . which a near-unanimous body of lower

court authority has expressly approved," again, the law affords the defendant no reasonable basis supporting a novel departure from that practice. *Id.*

The Supreme Court reversed its own precedent in *Johnson*. The Supreme Court took the additional step in *Welch* of giving retroactive application to its new rule. The claim here would seem to call, therefore, for a straightforward application of *Ross*, as many district courts already have concluded. The United States argues nevertheless that the legal basis of the Court's decision in *Johnson* remained available to Mann at the time of his direct appeal. The United States notes that "defendants were claiming the residual clause was unconstitutionally vague long before *Johnson*," and "a Supreme Court Justice had expressly welcomed such a claim." Answer at 6-7.

Application of the residual clause of the Armed Career Criminal Act had been challenged on numerous occasions at the time that Mann was indicted in 2009. The United States Supreme Court issued three opinions between 2007 and 2009 deciding whether a particular offense qualified as a "violent felony" under the residual clause. The Court issued a fourth decision in 2011, after Mann's appeal had been fully briefed, but before it was decided. These four cases between 2007 and 2011 promulgated at least two unrelated tests. The Supreme Court applied one of those tests quite differently in three cases. *See Johnson*, 135 S. Ct. at 2558-59. As discussed below, the four decisions generated concurring and dissenting

opinions variously suggesting vagueness as a possible problem with the clause. These views failed to gain a majority of the Supreme Court.

Congress enacted the residual clause in its current form in 1986. *See* Pub. L. No. 99-570, § 1402(b), 100 Stat. 3207 (Oct. 27, 1986). Between its enactment and the Supreme Court's first decision interpreting the clause, *James v. United States*, 550 U.S. 192 (2007), every federal appellate court to consider the issue had rejected claims that the residual clause was unconstitutionally vague. Each of the four appellate courts gave short shrift to the argument. *See United States v. Childs*, 403 F.3d 970, 972 (8th Cir. 2005); *United States v. Presley*, 52 F.3d 64, 68 (4th Cir. 1995); *United States v. Sorenson*, 914 F.2d 173, 175 (9th Cir. 1990); *United States v. Gillies*, 851 F.2d 492, 496 (1st Cir. 1988). Courts routinely sentenced defendants under the residual clause without questioning whether it was unconstitutionally vague. No reasonable legal basis existed before the Supreme Court's decision in *James* to support an argument that the residual clause was unconstitutionally vague.

Justice Scalia argued in *James* that one of the Court's options for dealing with the residual clause was to "recognize the statute for the drafting failure it is and hold it void for vagueness." *James*, 550 U.S. at 230 (Scalia, J., dissenting. Justice Stevens and Justice Ginsburg joined Justice Scalia's dissent. *Id.* at 214. Like the majority, the dissent in *James* rejected the conclusion of vagueness and

instead tried "to figure out a coherent way of interpreting the statute so that it applies in a relatively predictable and administrable fashion to a smaller subset of crimes." *James*, 550 U.S. at 230 (Scalia, J., dissenting).

Justice Scalia argued in dissent in *Sykes v. United States*, 564 U.S. 1, 28 (2011) (Scalia, J., dissenting), that the Supreme Court "should admit that ACCA's residual provision is a drafting failure and declare it void for vagueness." Not a single Justice joined this dissent. After *James* and *Sykes*, every appellate court that considered the matter believed that the Supreme Court already had rejected a vagueness challenge to the residual clause. Justice Scalia opinion in *Johnson* supports this view: "We hold that imposing an increased sentence under the residual clause of the Armed Career Criminal Act violates the Constitution's guarantee of due process. Our *contrary holdings* in *James* and *Sykes* are overruled." *Johnson*, 135 S. Ct. at 2563 (emphasis added).

Before *James*, every federal appellate court to consider the issue had rejected vagueness challenges to the residual clause. These decisions represent "longstanding and widespread practice" of courts imposing and affirming sentences based on the residual clause. A vagueness challenge to the residual clause remained unavailable until *Johnson*. The novelty of the *Johnson* decision excuses Mann's failure to challenge his armed career criminal status on direct appeal. The settled state of the law before *Johnson* excuses Mann's default and

entitles him to a decision on the merits.

## III. Analysis

The Court must analyze Mann's convictions for three Montana offenses: attempted aggravated assault, a violation of Mont. Code Ann. §§ 45-4-103(1) and 45-5-202(1) (1995); burglary, a violation of Mont. Code Ann. § 45-6-204(2)(1) (2001); and felony assault on a minor, a violation of Mont. Code Ann. § 45-5-212 (2005). *See* Presentence Report ¶¶ 26, 50-52.

Mann claims that none of these crimes meet the federal definition of a "violent felony" under the residual clause. *Johnson* invalidated the "violent felony" designation under the residual clause. Mann must show the *Johnson* error was not harmless—that is, that he does not qualify as an armed career criminal under any remaining provisions of the ACCA.

### A. The Force Clause

Mann's convictions for attempted aggravated assault and felony assault on a minor could have been deemed "violent felonies" only under the force clause of the ACCA, 18 U.S.C. § 924(e)(2)(B)(i). This clause provides that an offense constitutes a "violent felony" if it "has as an element the use, attempted use, or threatened use of physical force against the person of another."

To meet the force clause, the offense in question must require the State to prove that the defendant used "*violent* force—that is, force capable of causing

physical pain or injury to another person," *Johnson v. United States*, 559 U.S. 133, 140 (2010) ("*Johnson I*") (emphasis in original). This "violent force" contrasts with mere common-law force, which included even "offensive touching." *Id.* at 139. Further, an offense may qualify only if it requires proof the defendant actively employed force, as opposed to setting force in motion accidentally or negligently, or possibly even recklessly. *See Leocal v. Ashcroft*, 543 U.S. 1, 9 (2004) (interpreting 18 U.S.C. § 16(a)); *Johnson I*, 559 U.S. at 140 (applying reasoning of *Leocal* to force clause of ACCA).

The facts of a defendant's conviction generally prove "quite irrelevant" to this analysis. *Moncrieffe v. Holder*, __ U.S. __, 133 S. Ct. 1678, 1684 (2013) (internal quotation marks omitted). Federal courts instead should consider only "what the state conviction necessarily involved," as if every conviction "'rested upon nothing more than the least of the acts' criminalized" by the state statute, *id.* (quoting *Johnson I*, 559 U.S. at 137). In other words, the force element must be met in every realistic instance of conviction under the state statute.

For this reason, federal courts often look to case law from the appropriate jurisdiction applying the statute to specific acts can be useful in determining whether the elements of the state statute meet the elements of the federal definition of a "violent felony." *See Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007); *see also, e.g.*, *United States v. Garcia-Jimenez*, 807 F.3d 1079, 1087-89 (9th Cir.

2015) (holding that New Jersey's definition of "attempt" encompasses more conduct than federal "attempt," so that conviction for attempted aggravated assault did not qualify as a "crime of violence" under commentary to U.S.S.G. § 2L1.2); *Ortega-Mendez v. Gonzales*, 450 F.3d 1010, 1016-18 (9th Cir. 2006); *United States v. Bonat*, 106 F.3d 1472, 1475-76 (9th Cir. 1997).

### B. Attempted Aggravated Assault

Mann was convicted for an attempted aggravated assault that occurred in November 1995. "A person commits the offense of aggravated assault if the person purposely or knowingly causes serious bodily injury to another." Mont. Code Ann. § 45-5-202(1) (1995). "A person commits the offense of attempt when, with the purpose to commit a specific offense, he does any act toward the commission of such offense." *Id.* § 45-4-103(1).

Notably, the aggravated assault statute does not explicitly require the state to prove that the defendant used force at all. The statute focuses instead on the injury that the defendant causes. Thus, the question here is whether the state, in proving that the defendant caused bodily injury, necessarily also proved that the defendant used, or attempted or threatened to use, physical force. In other words, whether every instance of bodily injury was caused by the use, or attempted or threatened use, of physical force. Montana's statutory definition of bodily and serious bodily injury and Montana case law assist this analysis.

In *State v. Sherer*, 60 P.3d 1010 (Mont. 2002), a defendant in Florida caused serious bodily injury to a woman in Bozeman, Montana. He exerted no force as he committed the offense by telephone. Pretending to be a doctor treating a close relative, the defendant placed calls from Fort Lauderdale to about 40 women in Montana. *See Sherer*, 60 P.3d at 1011 ¶¶ 5-8. Of the 40, "[o]ne woman cut her nipple and another placed a knife inside her vagina. For these two calls, the State charged Sherer with criminal endangerment. The third woman, with encouragement from Sherer under the guise of medical self-examination, cut off her left nipple." *Id.* at 1011 ¶ 8. As to the third woman, the Montana Supreme Court affirmed Sherer's conviction for aggravated assault. *Id.* at 1014 ¶ 24.

Sherer spoke on the phone and told the woman to carry out an act that would cause her serious bodily injury, that is, injury that "causes serious permanent disfigurement or protracted loss or impairment of the function or process of any bodily member or organ" or that, "at the time of injury, can reasonably be expected" to do so. Mont. Code Ann. § 45-2-101(66)(a)(ii), (iii) (2015). He did not use, attempt to use, or threaten to use force, but he certainly directed her to use force. Use of indirect force may be enough, provided that the defendant employs physical force at some point in an instrumental way. A shooting, for instance, involves a "use of force," not because the defendant forcefully pulls the trigger, but because the bullet forcefully enters the body of the victim. *See United States v.*

*Castleman*, __ U.S. __, 134 S. Ct. 1405, 1416 (2014).  The facts underlying *Sherer* do not disqualify Montana's definition of aggravated assault under the force clause of the federal ACCA.

The decision proves important, however, for a separate reason.  The court explained that the statutes defining "cause" and "conduct," in conjunction with the statute defining aggravated assault, "do not require that the defendant personally direct force toward the victim, but specifically contemplate that *any form of communication, itself*, may be sufficient conduct."  *Sherer*, 60 P.3d at 305 ¶ 21 (emphasis added).  The observation applies here because another Montana statute, the one defining "serious bodily injury," "includes serious mental illness or impairment."  Mont. Code Ann. § 45-2-101(66)(b) (2015) (subsection 64(b) in 1995).

A person can commit aggravated assault in Montana by use of indirect force that would fall within the federal definition of use of force. A person also can commit aggravated assault in Montana, however, by causing serious mental impairment.  Violent physical force admittedly might cause serious mental impairment. "[A]ny form of communication," such as long-term verbal emotional abuse or degradation also might cause serious mental impairment as evidenced by *Sherer*.  Such conduct would be reprehensible, damaging to society, and worthy of criminalization.  This conduct would not necessarily include, as an essential

element, the use, attempted use, or threatened use of physical force.

Other Montana cases suggest that communication that causes serious mental illness or impairment meets the elements of "causing serious bodily injury." For example, the Montana Supreme Court justified the continued detention of a defendant convicted of stalking and committed to custody. To continue the defendant's detention, the State was required to prove that the defendant's release presented a substantial risk of "serious bodily injury," the same element at issue here. *See State v. Cooney*, 963 P.2d 1272, 1273-74 ¶¶ 7-14 (Mont. 1998); Mont. Code Ann. § 46-14-301(3)(a); *see also State v. Cooney*, 1 P.3d 956, 957-58 ¶¶ 6-12 (Mont. 2000). The court reasoned that the defendant's release likely would cause serious mental consequences to his victim.

The fact that potential mental injury to the victim relieved the State from being required to prove, under any standard, that the defendant likely was to have any physical contact with the victim, much less that he likely was to use, or attempt or threaten to use, force capable of causing her physical pain. The Montana Supreme Court likewise agreed in *State v. Mason*, 82 P.3d 903 (Mont. 2003), that a defendant may be a "violent felony offender" if he "causes serious bodily injury to another" in the form of "a serious mental health condition," although under the circumstances of the case it found no evidence that the defendant caused the victim to develop such a condition. *Id.* at 910 ¶¶ 35-36.

18

Mental illness or impairment may constitute bodily or serious bodily injury under Montana law. *Sherer*, *Cooney*, and *Mason* show that such injury may be caused by communication rather than by physical force or even physical contact. *See Duenas-Alvarez*, 549 U.S. at 193. "Serious bodily injury" represents an indivisible element of Montana's aggravated assault statute. No other element of aggravated assault necessarily requires the State to prove that the defendant used, or attempted or threatened to use, physical force. These circumstances indicate that aggravated assault and attempted aggravated assault under Montana law would not qualify as a violent felony under the Armed Career Criminal Act.

To prevail on his § 2255 motion, Mann needed to demonstrate that at least one of his three prior convictions does not qualify as a violent felony under 18 U.S.C. § 924(e)(2)(B). Attempted aggravated assault under Montana law does not qualify. The Court need not consider any other convictions. Mann's motion under 28 U.S.C. § 2255 must be granted, and he must be re-sentenced. A certificate of appealability proves unnecessary as this decision is not "adverse to the applicant." Rule 11(a), Rules Governing § 2255 Proceedings.

This decision means only that Mann may not be subject to sentencing as an armed career criminal. His new sentence will be determined by applying 18 U.S.C. § 3553(a), and, except as limited by *Peugh v. United States*, __ U.S. __, 133 S. Ct. 2072 (2013), the 2016 Sentencing Guidelines.

Accordingly, IT IS HEREBY ORDERED as follows:

1.  Mann's motion to vacate, set aside, or correct his sentence (Doc. 58) is GRANTED.

2.  The Judgment entered on July 20, 2010 (Doc. 43), is VACATED.

3.  Sentencing is set for **August 31, 2017,** at **10:00 a.m.** in the Missouri River Courthouse, Great Falls, Montana.

4.  The United States Probation Office shall conduct a supplemental presentence investigation and prepare a new presentence report omitting Armed Career Criminal designation.  Fed. R. Crim. P. 32(c), (d); 18 U.S.C. § 3552(a).

5.  The probation officer shall disclose the completed report, except for recommendations of the probation officer, to Defendant, counsel for Defendant, and counsel for the government on or before **July 17, 2017.**  The probation officer shall not disclose any recommendation made or to be made to the Court.

6.  If restitution is mandatory, the probation officer shall discuss a payment plan with Defendant and shall make recommendations to the Court concerning interest and a payment schedule.

7.  Counsel shall attempt in good faith to resolve disputes over any material in the presentence report. Unresolved objections to be relied upon at sentencing shall be presented to the probation officer on or before **August 1, 2017.**  U.S.S.G. § 6A1.2.  **Any unresolved objections are expected to be included in the pre-**

**sentence report, not in a sentencing memorandum.**

8.  The presentence report, in final form, including any unresolved objections, shall be delivered to the Court and the parties on or before **August 10, 2017.**

9.  Sentencing memoranda and supporting documents addressing all relevant sentencing issues shall be filed on or before **August 17, 2017.**  Absent good cause shown, sentencing memoranda and supporting documents filed after **August 17, 2017),** will not be considered in addressing sentencing issues.  Failure to timely file sentencing memoranda may result in imposition of sanctions against counsel.

10.  Responses to sentencing memoranda shall be filed on or before **August 24, 2017.**

11.  Reply briefs will not be accepted for filing in sentencing matters.

12.  The Court will resolve objections included in the Addendum to the presentence report at the sentencing hearing in accordance with U.S.S.G. § 6A1.3.

13.  All parties who intend to have witnesses testify at sentencing shall give notice to this Court ten days prior to the sentencing date.

14.  The United States Marshals Service must transport Errol Aram Mann, BOP # 10786-046, to the District of Montana.  Mann must be present in Montana and available to consult with counsel at least 30 days before sentencing.

15.  When an Amended Judgment is entered in the criminal case, the clerk

shall enter judgment in the civil action, by separate document, in favor of Mann

and against the United States.

DATED this 9th day of May, 2017.

Brian Morris
United States District Court Judge

cc:     USMS
        USPO